### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **DEBRA MOSER and** | : | |
| **KONSTANDINOS PATZANAKIDIS as** | : | **CASE NO:** |
| **Assignees of RESORT RECOVERY OF THE** | : | |
| **PALM BEACHES, LLC** | : | |
| | : | **DEMAND FOR JURY** |
| **Plaintiff** | : | |
| **vs.** | : | |
| | : | |
| **CONNECTICARE, INC.** | : | |
| | : | **SEPTEMBER 26, 2024** |
| **Defendants** | : | |

### COMPLAINT

The Plaintiffs, DEBRA MOSER and KONSTANDINOS PATZANAKIDIS, by and through their undersigned counsel, hereby file and serve this lawsuit and sue the Defendant, CONNECTICARE, INC., and further alleges as follows:

### JURISDICTIONAL ALLEGATIONS

1.      This is an action for legal and monetary damages in which the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00) exclusive of attorney's fees, costs or prejudgment interests). The parties are diverse in citizenship and therefore jurisdiction vests in the federal district court pursuant to 28 U.S.C. § 1332.

2.      At all times material hereto, the Plaintiff, DEBRA MOSER (hereinafter referred to Individually as Ms. Moser or by her full name and collectively as the Plaintiff), has been a resident of the State of Florida and has maintained a domicile within the boundaries of Palm Beach County, Florida.

3.      At all times material hereto, the Plaintiff, KONSTANDINOS PATZANAKIDIS (hereinafter referred to Individually as Mr. Patzanakidis or by his full name and collectively as the Plaintiff) has been a resident of the State of Florida and has maintained a domicile within the boundaries of Palm Beach County, Florida.

4.      Prior to July 27, 2022, Ms. Moser and Mr. Patzanakidis were the owners and operators of a rehabilitation and recovery business known as RESORT RECOVERY OF THE PALM BEACHES, LLC, which maintained its principal place of business within the boundaries of Palm Beach County, Florida. Although this limited liability company was sold to a third-party on July 27, 2022, Ms. Moser and Mr. Patzanakidis retained ownership of accounts receivable including those alleged within the body of this Complaint. Those account receivables were generated as a result of services performed in Palm Beach County and pursuant to a contract that contemplated payment for services within this venue.

5.      At all times material hereto, the Defendant, CONNECTICARE, INC (hereinafter referred to as CONNECTICARE, its full name or the Defendant) has been a for-profit business which was formed in, and maintains it's principal address within, the State of Connecticut. The Defendant provides services primarily to Connecticut residents, however, those services include the administration and medical bills both within, and outside of, the state.

6.      Therefore, jurisdiction and venue are appropriate in the United States Federal District Court for the District of Connecticut.

## GENERAL ALLEGATIONS

The Plaintiffs hereby re-allege and incorporate paragraphs 1-6 above as though they were fully set forth herein, and further state as follows:

7.      In 2020, the Plaintiffs owned a rehabilitation and recovery business known as RECOVERY RESORT OF THE PALM BEACHES, LLC which was in the business of providing rehabilitation services to patients suffering from substance abuse addiction conditions at its facility in Palm Beach County, Florida.

8.      In particular, RECOVERY RESORT OF THE PALM BEACHES, LLC provided both in- patient and outpatient rehab services aimed treating victims of alcohol and drug

addiction. In exchange, patients executed an Assignment of Benefits that allowed RECOVERY RESORT OF THE PALM BEACHES, LLC to submit an out-of-network claim for compensation to their health insurance company, and to receive compensation for services rendered.

9.      In 2020, RECOVERY RESORT OF THE PALM BEACHS, LLC provided treatment and services to nine (9) patients who were insured by CONNECTICARE, INC. The names of these patients are not included in this Complaint for privacy reasons, but they are identified as follows: (1) A.S.; (2) A.R.; (3) C.D.; (4) M.G..; (5) N.L.; (6) Y.F.; (7) S.M.; (8) K.M.; (9) F.P; and (10) N.Lu. (A copy of an Assignment of Benefits agreement executed by each of these patients is not attached to the Complaint filed in the public record for privacy purposes but has been served upon the Defendant and will be filed as necessary.)

10.     Each of these patients was a participant in a health insurance plan provided by CONNECTICARE, INC., that had agreed, either expressly or through a course of conduct, to compensate for the services that it provided. In particular, each of these patients was a participant in a CONNECTICARE health insurance plan that provided benefits for mental health and substance abuse addiction services.

11.    The mental health and substance abuse addiction services were administered, by express or implied agreement with CONNECTICARE, by OPTUM, INC., and UNITED HEALTHCARE SERVICES, INC. However, CONNECTICARE remained liable for the payments of any eligible benefits due to these patients.

12.    Each of these patients contacted RECOVERY REORT OF THE PALM BEACHES, LLC to seek treatment for a drug or alcohol addiction condition. Each was informed that RECOVERY RESORT was out-of-network for CONNECTICARE patients but that they were eligible for treatment and RECOVERY RESORT would bill CONNECTICARE, or its designees, the out-of-network rate.

13.    Each of these patients then obtained treatment services from RECOVERY RESORT. As consideration for this treatment, each of these patients executed an Assignment of Benefits which: (a) permitted RECOVERY RESORT to submit claims and communicate directly with CONNECTICARE or its designees; and (b) entitled RECOVERY RESORT to payment based upon the benefits that each patient was eligible for under the terms of his or her respective health insurance plan. (A redacted copy of each Assignment of Benefits is attached as Exhibit "A" to this Complaint.)

14.    Prior to the admission of each of these patients, DEBRA MOSER contacted United Healthcare, the designee of CONNECTICARE, on behalf of the patient in order to

obtain pre- authorization for treatment. In each case, Ms. Moser was told that United Healthcare (the CONNECTICARE administrator) was neither providing, nor requiring pre-authorizations for treatment on a temporary basis because of the emerging pandemic. Instead, Ms. Moser was informed that the preauthorization requirement for each patient had been waived and that RECOVERY REORT OF THE PALM BEACHES, LLC should proceed with treatment.

15.     In addition to the verbal waiver of United Healthcare's pre-authorization procedures, this waiver was listed on the company's website. Ms. Moser was repeatedly told that this waiver would be in place at least until the end of 2020.

16.     Had United Healthcare's pre-authorization procedures remained in place throughout 2020, each of the patients listed in paragraph nine (9) of this Complaint would have been eligible for treatment and CONNECTICARE would have been responsible for reimbursement of the facility's charges.

17.     Therefore, based upon the terms and benefits encompassed within the health insurance contract between CONNECTICARE and each of these patients, and the express representations of UNITED HEALTHCARE, the RECOVERY RESORT provided treatment to each of the patients referenced in paragraph eleven (11) of this Complaint. In consideration of this treatment, RECOVERY RESORT expected to be paid an out-of-network rate by

CONNECTICARE, OPTUM and/or UNITED HEALTHCARE in accordance with the terms of these insurance contracts and in line with its past course of dealings.

18.    When RECOVERY RESORT OF THE PALM BEACHES, LLC submitted claims to United Healthcare with regard to the treatment of these patients, the claims were denied on the basis that there had been no pre-authorization.

19.    In doing so, CONNECTICARE breached its contracts with the patients treated by RECOVERY RESORT and did so to the substantial determinant of the Plaintiffs.

20.    DEBRA MOSER and RECOVERY RESORT then followed the administrative appeals procedure with regard to each of the patients listed in paragraph eleven (11) of the Complaint.   These appeals were all eventually denied and the internal appellate process provided, and mandated by the Defendant was exhausted.

## <u>COUNT I – BREACH OF CONTRACT (A.S.)</u>

The Plaintiffs hereby re-allege and incorporate paragraphs 1-20 above as though they were fully set forth herein, and further state as follows:

21.    In 2020, A.S. was a Participant in a health insurance policy through CONNECTICARE. This policy was identified by Connecticare policy number 970653868.

22.    This health insurance policy entitled A.S. to obtain mental health and substance abuse treatments which would be paid for by CONNECTICARE. The amount of the payment

would depend upon: (a) the reasonable charges assessed by the facility; and (b) whether the provider was in-network or out-of-network with CONNECTICARE.

23.     In consideration of this health insurance policy generally, and these mental health and substance abuse benefits specifically, A.S. paid CONNECTICARE premiums giving rise to a valid and enforceable contract.

24.     CONNECTICARE outsources the administration, management and payment of mental health and substance abuse treatments to third-party entities, including OPTUM INC., and UNITED HEALTHCARE SERVICES, INC.

25.     Therefore, mental health and substance abuse treatment providers acting under an Assignment of Benefits from A.S. were directed to coordinate their care and treatment through OPTUM and UNITED HEALTHCARE with the expectation that payments would flow through them from the underlying CONNECTICARE policy.

26.     A.S. contacted RECOVERY REORTS and sought treatment from its facility in Palm Beach County, Florida. In order to procure this treatment, A.S. executed an Assignment of Benefits in favor of RECOVERY RESORTS with the expectation that it would seek payment from CONNECTICARE either directly or through its designees, OPTUM and/or UNITED HEALTHCARE.

27.     Prior to admitting A.S. or providing any treatment, DEBRA MOSER contacted A.S. on his behalf to secure pre-authorization from the health insurance company.  When she did so, she was informed that UNITED HEALTHCARE was not presently requiring pre-authorizations because of emerging pandemic.  Ms. Moser was informed that the pre-authorization requirement in A.S.'s policy was suspended indefinitely and that RECOVERY RESPORTS should proceed as if it had been granted.  Ms. Moser confirmed this representation with a similar statement that was posted on the UNITED HEALTHCARE website.

28.     Based upon this representation, RECOVERY RESORTS provided care and treatment to A.S. with the express understanding that it would be paid out-of-network benefits by CONNECTICARE operating through either OPTUM, UNITED HEALTHCARE or both.

29.     RECOVERY RESORTS timely submitted claims to CONNECTICARE or its designees for payment of the services provided to A.S. pursuant to his health insurance policy.

30.     These claims were denied.

31.     The basis for the denials was alternatively: (a) the fact that the treatment had not been  pre-approved; and, (b) alleged issues with quality of care giving rise to a purported exclusion under the policy.

32.    The denial of these claims constitutes a breach of contract between CONNECTICARE and A.S.

33.    As the Assignee of these benefits, the Plaintiffs, DEBRA MOSER and KONSTANDINOS PATZANAKIDIS, are entitled to enforce the terms of this health insurance contract between A.S. and CONNECTICARE. The Plaintiffs have exhausted their administrative remedies under the Plan.

34.    Therefore, the Plaintiffs are entitled to an award of damages, including compensatory, actual and consequential damages, against the Defendant for breach of the health insurance contract between A.S. and CONNECTICARE in an amount to be determined by the trier-of-fact.

WHEREFORE, the Plaintiffs, DEBRA MOSER and KONSTANDINOS PATZANAKIDIS demand judgment against the Defendant, CONNECTICARE, INC., in an amount determined by the trier- of-fact along with an award of prejudgment interest and costs.

## COUNT II – BREACH OF CONTRACT (A.R.)

The Plaintiffs hereby re-allege and incorporate paragraphs 1-20 above as though they were fully set forth herein, and further state as follows:

35.     In 2020, A.R. was a Participant in a health insurance policy through CONNECTICARE. This policy was identified by ConnectiCare policy number 97063669301.

36.     This health insurance policy entitled A.R. to obtain mental health and substance abuse treatments which would be paid for by CONNECTICARE. The amount of the payment would depend upon: (a) the reasonable charges assessed by the facility; and (b) whether the provider was in-network or out-of-network with CONNECTICARE.

37.     In consideration of this health insurance policy generally, and these mental health and substance abuse benefits specifically, A.R. paid CONNECTICARE premiums giving rise to a valid and enforceable contract.

38.     CONNECTICARE outsources the administration, management and payment of mental health and substance abuse treatments to third-party entities, including OPTUM INC., and UNITED HEALTHCARE SERVICES, INC.

39.     Therefore, mental health and substance abuse treatment providers acting under an Assignment of Benefits from A.R. were directed to coordinate their care and treatment through OPTUM and UNITED HEALTHCARE with the expectation that payments would flow through them from the underlying CONNECTICARE policy.

40.     A.R. contacted RECOVERY REORTS and sought treatment from its facility in Palm Beach County, Florida. In order to procure this treatment, A.R. executed an Assignment

of Benefits in favor of RECOVERY RESORTS with the expectation that it would seek payment from CONNECTICARE either directly or through its designees, OPTUM and/or UNITED HEALTHCARE.

41.     Prior to admitting A.R. or providing any treatment, DEBRA MOSER contacted UNITED on his behalf to secure pre-authorization from the health insurance company.  When she did so, she was informed that UNITED HEALTHCARE was not presently requiring pre-authorizations because of the emerging pandemic.  Ms. Moser was informed that the pre-authorization requirement in A.R. policy was suspended indefinitely and that RECOVERY RESORTS should proceed as if it had been granted. Ms. Moser confirmed this representation with a similar statement that was posted on the UNITED HEALTHCARE website.

42.     Based upon this representation, RECOVERY RESORTS provided care and treatment to A.R. with the express understanding that it would be paid out-of-network benefits by CONNECTICARE operating through either OPTUM, UNITED HEALTHCARE or both.

43.     RECOVERY RESORTS timely submitted a claim to CONNECTICARE or its designees for payment of the services provided to A.R. pursuant to his health insurance policy.

44.     These claims were denied.

45.    The denial of these claims constitutes a breach of contract between CONNECTICARE and C.D.

46.    The basis for the denials was alternatively: (a) the fact that the treatment had not been pre-approved; and, (b) alleged issues with quality of care giving rise to a purported exclusion under the policy.

47.    As the Assignee of these benefits, the Plaintiffs, DEBRA MOSER and KONSTANDINOS PATZANAKIDIS, are entitled to enforce the terms of this health insurance contract between A.R. and CONNECTICARE. The Plaintiffs have exhausted their administrative remedies under the Plan.

48.    Therefore, the Plaintiffs are entitled to an award of damages, including compensatory, actual and consequential damages, against the Defendant for breach of the health insurance contract between A.R. and CONNECTICARE in an amount to be determined by the trier-of-fact.

WHEREFORE, the Plaintiffs, DEBRA MOSER and KONSTANDINOS PATZANAKIDS demand judgement against the Defendant, CONNECITCARE, INC., in an amount determined by the trier-of-fact along with an award of prejudgment interest and costs.

## COUNT III – BREACH OF CONTRACT (C.D.)

The Plaintiffs hereby re-allege and incorporate paragraphs 1-20 above as though they were fully set forth herein, and further state as follows:

49.     In 2020, C.D. was a Participant in a health insurance policy through CONNECTICARE. This policy was identified by ConnectiCare policy number 97066040301.

50.     This health insurance policy entitled C.D. to obtain mental health and substance abuse treatments which would be paid for by CONNECTICARE. The amount of the payment would depend upon: (a) the reasonable charges assessed by the facility; and (b) whether the provider was in-network or out-of-network with CONNECTICARE.

51.     In consideration of this health insurance policy generally, and these mental health and substance abuse benefits specifically, C.D. paid CONNECTICARE premiums giving rise to a valid and enforceable contract.

52.     CONNECTICARE outsources the administration, management and payment of mental health and substance abuse treatments to third-party entities, including OPTUM INC., and UNITED HEALTHCARE SERVICES, INC.

53.     Therefore, mental health and substance abuse treatment providers acting under an Assignment of Benefits from C.D. were directed to coordinate their care and treatment through OPTUM and UNITED HEALTHCARE with the expectation that payments would flow through them from the underlying CONNECTICARE policy.

54.     C.D. contacted RECOVERY REORTS and sought treatment from its facility in Palm Beach County, Florida. In order to procure this treatment, C.D. executed an Assignment of Benefits in favor of RECOVERY RESORTS with the expectation that it would seek payment from  CONNECTICARE either directly or through its designees, OPTUM and/or UNITED HEALTHCARE.

55.     Prior to admitting C.D. or providing any treatment, DEBRA MOSER contacted UNITED HEALTHCARE on his behalf to secure pre-authorization from the health insurance company. When she did so, she was informed that UNITED HEALTHCARE was not presently requiring pre-authorizations because of the emerging pandemic. Ms. Moser was informed that the pre-authorization requirement in C.D.'s policy was suspended indefinitely and that RECOVERY RESORTS should proceed as if it had been granted. Ms. Moser confirmed this representation with a similar statement that was posted on the UNITED HEALTHCARE website.

56.     Based upon this representation, RECOVERY RESORTS provided care and treatment to C.D. with the express understanding that it would be paid out-of-network benefits by CONNECTICARE operating through either OPTUM, UNITED HEALTHCARE or both.

57.     RECOVERY RESORTS timely submitted a claim to CONNECTICARE or its designees for payment of the services provided to C.D. pursuant to his health insurance policy.

58.     These claims were denied.

59.     The basis for the denials was alternatively: (a) the fact that the treatment had not been pre-approved; and, (b) alleged issues with quality of care giving rise to a purported exclusion under the policy.

60.     The denial of these claims constitutes a breach of contract between CONNECTICARE and C.D.

61.     As the Assignee of these benefits, the Plaintiffs, DEBRA MOSER and KONSTANDINOS PATZANAKIDIS, are entitled to enforce the terms of this health insurance contract between C.D. and CONNECTICARE. The Plaintiffs have exhausted their administrative remedies under the Plan.

62.     Therefore, the Plaintiffs are entitled to an award of damages, including compensatory, actual and consequential damages, against the Defendant for breach of the

health insurance contract between C.D. and CONNECTICARE in an amount to be determined by the trier-of-fact.

WHEREFORE, the Plaintiffs, DEBRA MOSER and KONSTANDINOS PATZANAKIDS demand judgement against the Defendant, CONNECITCARE, INC., in an amount determined by the trier-of-fact along with an award of prejudgment interest and costs.

## <u>COUNT IV – BREACH OF CONTRACT (M.G.)</u>

The Plaintiffs hereby re-allege and incorporate paragraphs 1-19 above as though they were fully set forth herein, and further state as follows:

63.    In 2020, M.G. was a Participant in a health insurance policy through CONNECTICARE. This policy was identified by ConnectiCare policy number 97018189301.

64.    This health insurance policy entitled M.G. to obtain mental health and substance abuse treatments which would be paid for by CONNECTICARE. The amount of the payment would depend upon: (a) the reasonable charges assessed by the facility; and (b) whether the provider was in-network or out-of-network with CONNECTICARE.

65.    In consideration of this health insurance policy generally, and these mental health and substance abuse benefits specifically, M.G. paid CONNECTICARE premiums giving rise to a valid and enforceable contract.

66.    CONNECTICARE outsources the administration, management and payment of mental health and substance abuse treatments to third-party entities, including OPTUM INC., and UNITED HEALTHCARE SERVICES, INC.

67.    Therefore, mental health and substance abuse treatment providers acting under an Assignment of Benefits from M.G. were directed to coordinate their care and treatment through OPTUM and UNITED HEALTHCARE with the expectation that payments would flow through them from the underlying CONNECTICARE policy.

68.    M.G. contacted RECOVERY REORTS and sought treatment from its facility in Palm Beach County, Florida. In order to procure this treatment, M.G. executed an Assignment of Benefits in favor of RECOVERY RESORTS with the expectation that it would seek payment from CONNECTICARE  either directly or through its designees, OPTUM and/or UNITED HEALTHCARE.

69.    Prior to admitting M.G. or providing any treatment, DEBRA MOSER contacted UNITED HEALTHCARE on his behalf to secure pre-authorization from the health insurance company. When she did so, she was informed that UNITED HEALTHCARE was not presently requiring pre-authorizations because of the emerging pandemic. Ms. Moser was informed that the pre-authorization requirement in M.G.'s policy was suspended indefinitely and that RECOVERY RESORTS should proceed as if it had been granted. Ms. Moser confirmed this

representation with a similar statement that was posted on the UNITED HEALTHCARE website.

70.     Based upon this representation, RECOVERY RESORTS provided care and treatment to M.G. with the express understanding that it would be paid out-of-network benefits by CONNECTICARE operating through either OPTUM, UNITED HEALTHCARE or both.

71.     RECOVERY RESORTS timely submitted a claim to CONNECTICARE or its designees for payment of the services provided to M.G. pursuant to his health insurance policy.

72.     These claims were denied.

73.     The basis for the denials was alternatively: (a) the fact that the treatment had not been pre-approved; and, (b) alleged issues with quality of care giving rise to a purported exclusion under the policy.

74.     The denial of these claims constitutes a breach of contract between CONNECTICARE and M.G.

75.     As the Assignee of these benefits, the Plaintiffs, DEBRA MOSER and KONSTANDINOS PATZANAKIDIS, are entitled to enforce the terms of this health insurance contract between M.G. and CONNECTICARE. The Plaintiffs have exhausted their administrative remedies under the Plan.

76.     Therefore, the Plaintiffs are entitled to an award of damages, including compensatory, actual and consequential damages, against the Defendant for breach of the health insurance contract between M.G. and CONNECTICARE in an amount to be determined by the trier-of-fact.

WHEREFORE, the Plaintiffs, DEBRA MOSER and KONSTANDINOS PATZANAKIDS demand judgement against the Defendant, CONNECITCARE, INC., in an amount determined by the trier-of-fact along with an award of prejudgment interest and costs.

## COUNT V – BREACH OF CONTRACT (N.L)

The Plaintiffs hereby re-allege and incorporate paragraphs 1-20 above as though they were fully set forth herein, and further state as follows:

77.     In 2020, N.L. was a Participant in a health insurance policy through CONNECTICARE. This policy was identified by ConnectiCare policy number 97063361401.

78.     This health insurance policy entitled N.L. to obtain mental health and substance abuse treatments which would be paid for by CONNECTICARE. The amount of the payment would depend upon: (a) the reasonable charges assessed by the facility; and (b) whether the provider was in-network or out-of-network with CONNECTICARE.

79.     In consideration of this health insurance policy generally, and these mental health and substance abuse benefits specifically, N.L. paid CONNECTICARE premiums giving rise to a valid and enforceable contract.

80.     CONNECTICARE outsources the administration, management and payment of mental health and substance abuse treatments to third-party entities, including OPTUM INC., and UNITED HEALTHCARE SERVICES, INC.

81.     Therefore, mental health and substance abuse treatment providers acting under an Assignment of Benefits from N.L. were directed to coordinate their care and treatment through OPTUM and UNITED HEALTHCARE with the expectation that payments would flow through them from the underlying CONNECTICARE policy.

82.     N.L. contacted RECOVERY REORTS and sought treatment from its facility in Palm Beach County, Florida. In order to procure this treatment, N.L. executed an Assignment of Benefits in favor of RECOVERY RESORTS with the expectation that it would seek payment from CONNECTICARE either directly or through its designees, OPTUM and/or UNITED HEALTHCARE.

83.     Prior to admitting N.L. or providing any treatment, DEBRA MOSER contacted UNITED HEALTHCARE on his behalf to secure pre-authorization from the health insurance company. When she did so, she was informed that UNITED HEALTHCARE was not presently

requiring pre-authorizations because of the emerging pandemic. Ms. Moser was informed that the pre-authorization requirement in N.L.'s policy was suspended indefinitely and that RECOVERY RESORTS should proceed as if it had been granted. Ms. Moser confirmed this representation with a similar statement that was posted on the UNITED HEALTHCARE website.

84.    Based upon this representation, RECOVERY RESORTS provided care and treatment to N.L. with the express understanding that it would be paid out-of-network benefits by CONNECTICARE operating through either OPTUM, UNITED HEALTHCARE or both.

85.    RECOVERY RESORTS timely submitted a claim to CONNECTICARE or its designees for payment of the services provided to N.L. pursuant to his health insurance policy.

86.    These claims were denied.

87.    The basis for the denials was alternatively: (a) the fact that the treatment had not been pre-approved; and, (b) alleged issues with quality of care giving rise to a purported exclusion under the policy.

88.    The denial of these claims constitutes a breach of contract between CONNECTICARE and N.L.

89.     As the Assignee of these benefits, the Plaintiffs, DEBRA MOSER and KONSTANDINOS PATZANAKIDIS, are entitled to enforce the terms of this health insurance contract between N.L. and CONNECTICARE. The Plaintiffs have exhausted their administrative remedies under the Plan.

90.     Therefore, the Plaintiffs are entitled to an award of damages, including compensatory, actual and consequential damages, against the Defendant for breach of the health insurance contract between N.L. and CONNECTICARE in an amount to be determined by the trier-of-fact.

WHEREFORE, the Plaintiffs, DEBRA MOSER and KONSTANDINOS PATZANAKIDS demand judgement against the Defendant, CONNECITCARE, INC., in an amount determined by the trier-of-fact along with an award of prejudgment interest and costs.

## COUNT VI – BREACH OF CONTRACT (Y.F.)

The Plaintiffs hereby re-allege and incorporate paragraphs 1-20 above as though they were fully set forth herein, and further state as follows:

91.     In 2020, Y.F. was a Participant in a health insurance policy through CONNECTICARE. This policy was identified by ConnectiCare policy number 97064252801.

92.     This health insurance policy entitled Y.F. to obtain mental health and substance abuse treatments which would be paid for by CONNECTICARE. The amount of the payment

would depend upon: (a) the reasonable charges assessed by the facility; and (b) whether the provider was in-network or out-of-network with CONNECTICARE.

93.     In consideration of this health insurance policy generally, and these mental health and substance abuse benefits specifically, Y.F. paid CONNECTICARE premiums giving rise to a valid and enforceable contract.

94.     CONNECTICARE outsources the administration, management and payment of mental health and substance abuse treatments to third-party entities, including OPTUM INC., and UNITED HEALTHCARE SERVICES, INC.

95.     Therefore, mental health and substance abuse treatment providers acting under an Assignment of Benefits from Y.F. were directed to coordinate their care and treatment through OPTUM and UNITED HEALTHCARE with the expectation that payments would flow through them from the underlying CONNECTICARE policy.

96.     Y.F. contacted RECOVERY RESORTS and sought treatment from its facility in Plam Beach, Florida.  In order to procure this treatment, Y.F. executed an Assignment of Benefits in favor of RECOVERY RESORTS with the expectation that it would see payment from CONNECTICARE either directly or through its designees OPTUM and/or UNITED HEALTHCARE.

97.     Prior to admitting Y.F. or providing any treatment, DEBRA MOSER contacted UNITED HEALTHCARE on his behalf to secure pre-authorization from the health insurance company. When she did so, she was informed that UNITED HEALTHCARE was not presently requiring pre-authorizations because of the emerging pandemic. Ms. Moser was informed that the pre-authorization requirement in Y.F's policy was suspended indefinitely and that RECOVERY RESORTS should proceed as if it had been granted. Ms. Moser confirmed this representation with a similar statement that was posted on the UNITED HEALTHCARE website.

98.     Based upon this representation, RECOVERY RESORTS provided care and treatment to Y.F. with the express understanding that it would be paid out-of-network benefits by CONNECTICARE operating through either OPTUM, UNITED HEALTHCARE or both.

99.     RECOVERY RESORTS timely submitted a claim to CONNECTICARE or its designees for payment of the services provided to Y.F. pursuant to his health insurance policy.

100.    These claims were denied.

101.    The basis for the denials was alternatively: (a) the fact that the treatment had not been pre-approved; and, (b) alleged issues with quality of care giving rise to a purported exclusion under the policy.

102.    The denial of these claims constitutes a breach of contract between CONNECTICARE and Y.F.

103.    As the Assignee of these benefits, the Plaintiffs, DEBRA MOSER and KONSTANDINOS PATZANAKIDIS, are entitled to enforce the terms of this health insurance contract between Y.F. and CONNECTICARE. The Plaintiffs have exhausted their administrative remedies under the Plan.

104.    Therefore, the Plaintiffs are entitled to an award of damages, including compensatory, actual and consequential damages, against the Defendant for breach of the health insurance contract between Y.F. and CONNECITCARE in an amount to be determined by the trier-of-fact.

WHEREFORE, the Plaintiffs, DEBRA MOSER and KONSTANDINOS PATZANAKIDS demand judgement against the Defendant, CONNECITCARE, INC., in an amount determined by the trier-of-fact along with an award of prejudgment interest and costs.

## <u>COUNT VII – BREACH OF CONTRACT (S.M.)</u>

The Plaintiffs hereby re-allege and incorporate paragraphs 1-20 above as though they were fully set forth herein, and further state as follows:

105.    In 2020, S.M. was a Participant in a health insurance policy through CONNECTICARE. This policy was identified by ConnectiCare policy number 97065588601.

106.    This health insurance policy entitled S.M. to obtain mental health and substance abuse treatments which would be paid for by CONNECTICARE. The amount of the payment would depend upon: (a) the reasonable charges assessed by the facility; and (b) whether the provider was in-network or out-of-network with CONNECTICARE.

107.    In consideration of this health insurance policy generally, and these mental health and substance abuse benefits specifically, S.M. paid CONNECTICARE premiums giving rise to a valid and enforceable contract.

108.    CONNECTICARE outsources the administration, management and payment of mental health and substance abuse treatments to third-party entities, including OPTUM INC., and UNITED HEALTHCARE SERVICES, INC.

109.    Therefore, mental health and substance abuse treatment providers acting under an Assignment of Benefits from S.M. were directed to coordinate their care and treatment through OPTUM and UNITED HEALTHCARE with the expectation that payments would flow through them from the underlying CONNECTICARE policy.

110.    S.M. contacted RECOVERY RESORTS and sought treatment from its facility in Plam Beach, Florida.  In order to procure this treatment, S.M. executed an Assignment of Benefits in favor of RECOVERY RESORTS with the expectation that it would seek payment from CONNECTICARE either directly or through its designees OPTUM and/or UNITED

HEALTHCARE.

111.    Prior to admitting S.M. or providing any treatment, DEBRA MOSER contacted UNITED HEALTHCARE on his behalf to secure pre-authorization from the health insurance company. When she did so, she was informed that UNITED HEALTHCARE was not presently requiring pre-authorizations because of the emerging pandemic. Ms. Moser was informed that the pre-authorization requirement in S.M.'s policy was suspended indefinitely and that RECOVERY RESORTS should proceed as if it had been granted. Ms. Moser confirmed this representation with a similar statement that was posted on the UNITED HEALTHCARE website.

112.    Based upon this representation, RECOVERY RESORTS provided care and treatment to S.M. with the express understanding that it would be paid out-of-network benefits by CONNECTICARE operating through either OPTUM, UNITED HEALTHCARE or both.

113.    RECOVERY RESORTS timely submitted a claim to CONNECTICARE or its designees for payment of the services provided to S.M. pursuant to his health insurance policy.

114.    These claims were denied.

115.    The basis for the denials was alternatively: (a) the fact that the treatment had not been pre-approved; and, (b) alleged issues with quality of care giving rise to a purported exclusion under the policy.

116.    The denial of these claims constitutes a breach of contract between CONNECTICARE and S.M.

117.    As the Assignee of these benefits, the Plaintiffs, DEBRA MOSER and KONSTANDINOS PATZANAKIDIS, are entitled to enforce the terms of this health insurance contract between S.M. and CONNECTICARE. The Plaintiffs have exhausted their administrative remedies under the Plan.

118.    Therefore, the Plaintiffs are entitled to an award of damages, including compensatory, actual and consequential damages, against the Defendant for breach of the health insurance contract between S.M. and CONNECITCARE in an amount to be determined by the trier-of-fact.

WHEREFORE, the Plaintiffs, DEBRA MOSER and KONSTANDINOS PATZANAKIDS demand judgement against the Defendant, CONNECITCARE, INC., in an amount determined by the trier-of-fact along with an award of prejudgment interest and costs.

## COUNT VIII – BREACH OF CONTRACT (K.M.)

The Plaintiffs hereby re-allege and incorporate paragraphs 1-20 above as though they were fully set forth herein, and further state as follows:

119.    In 2020, K.M. was a Participant in a health insurance policy through CONNECTICARE. This policy was identified by ConnectiCare policy number 97066076401.

120.    This health insurance policy entitled K.M. to obtain mental health and substance abuse treatments which would be paid for by CONNECTICARE. The amount of the payment would depend upon: (a) the reasonable charges assessed by the facility; and (b) whether the provider was in-network or out-of-network with CONNECTICARE.

121.    In consideration of this health insurance policy generally, and these mental health and substance abuse benefits specifically, K.M. paid CONNECTICARE premiums giving rise to a valid and enforceable contract.

122.    CONNECTICARE outsources the administration, management and payment of mental health and substance abuse treatments to third-party entities, including OPTUM INC., and UNITED HEALTHCARE SERVICES, INC.

123.    Therefore, mental health and substance abuse treatment providers acting under an Assignment of Benefits from K.M. were directed to coordinate their care and treatment through OPTUM and UNITED HEALTHCARE with the expectation that payments would flow through them from the underlying CONNECTICARE policy.

124.    K.M. contacted RECOVERY RESORTS and sought treatment from its facility in Plam Beach, Florida.  In order to procure this treatment, K.M. executed an Assignment of Benefits in favor of RECOVERY RESORTS with the expectation that it would see payment from CONNECTICARE either directly or through its designees OPTUM and/or UNITED HEALTHCARE.

125.    Prior to admitting K.M. or providing any treatment, DEBRA MOSER contacted UNITED HEALTHCARE on his behalf to secure pre-authorization from the health insurance company. When she did so, she was informed that UNITED HEALTHCARE was not presently requiring pre-authorizations because of the emerging pandemic. Ms. Moser was informed that the pre-authorization requirement in K.M.'s policy was suspended indefinitely and that RECOVERY RESORTS should proceed as if it had been granted. Ms. Moser confirmed this representation with a similar statement that was posted on the UNITED HEALTHCARE website.

126.    Based upon this representation, RECOVERY RESORTS provided care and treatment to K.M. with the express understanding that it would be paid out-of-network benefits by CONNECTICARE operating through either OPTUM, UNITED HEALTHCARE or both.

127.    RECOVERY RESORTS timely submitted a claim to CONNECTICARE or its designees for payment of the services provided to K.M. pursuant to his health insurance policy.

128.    These claims were denied.

129.    The basis for the denials was alternatively: (a) the fact that the treatment had not been pre-approved; and, (b) alleged issues with quality of care giving rise to a purported exclusion under the policy.

130.    The denial of these claims constitutes a breach of contract between CONNECTICARE and K.M.

131.    As the Assignee of these benefits, the Plaintiffs, DEBRA MOSER and KONSTANDINOS PATZANAKIDIS, are entitled to enforce the terms of this health insurance contract between K.M. and CONNECTICARE. The Plaintiffs have exhausted their administrative remedies under the Plan.

132.    Therefore, the Plaintiffs are entitled to an award of damages, including compensatory, actual and consequential damages, against the Defendant for breach of the health insurance contract between K.M. and CONNECITCARE in an amount to be determined by the trier-of-fact.

WHEREFORE, the Plaintiffs, DEBRA MOSER and KONSTANDINOS PATZANAKIDS demand judgement against the Defendant, CONNECITCARE, INC., in an amount determined by the trier-of-fact along with an award of prejudgment interest and costs.

## COUNT IX – BREACH OF CONTRACT (F.P.)

The Plaintiffs hereby re-allege and incorporate paragraphs 1-20 above as though they were fully set forth herein, and further state as follows:

133.    In 2020, F.P. was a Participant in a health insurance policy through CONNECTICARE. This policy was identified by ConnectiCare policy number 970663473.

134.    This health insurance policy entitled F.P. to obtain mental health and substance abuse treatments which would be paid for by CONNECTICARE. The amount of the payment would depend upon: (a) the reasonable charges assessed by the facility; and (b) whether the provider was in-network or out-of-network with CONNECTICARE.

135.    In consideration of this health insurance policy generally, and these mental health and substance abuse benefits specifically, F.P. paid CONNECTICARE premiums giving rise to a valid and enforceable contract.

136.    CONNECTICARE outsources the administration, management and payment of mental health and substance abuse treatments to third-party entities, including OPTUM INC., and UNITED HEALTHCARE SERVICES, INC.

137.    Therefore, mental health and substance abuse treatment providers acting under an Assignment of Benefits from F.P. were directed to coordinate their care and treatment through OPTUM and UNITED HEALTHCARE with the expectation that payments would flow through them from the underlying CONNECTICARE policy.

138.    F.P. contacted RECOVERY RESORTS and sought treatment from its facility in Plam Beach, Florida.  In order to procure this treatment, F.P. executed an Assignment of Benefits in favor of RECOVERY RESORTS with the expectation that it would see payment from CONNECTICARE either directly or through its designees OPTUM and/or UNITED HEALTHCARE.

139.    Prior to admitting F.P. or providing any treatment, DEBRA MOSER contacted UNITED HEALTHCARE on his behalf to secure pre-authorization from the health insurance company. When she did so, she was informed that UNITED HEALTHCARE was not presently

requiring pre-authorizations because of the emerging pandemic. Ms. Moser was informed that the pre-authorization requirement in F.P.'s policy was suspended indefinitely and that RECOVERY RESORTS should proceed as if it had been granted. Ms. Moser confirmed this representation with a similar statement that was posted on the UNITED HEALTHCARE website.

140.    Based upon this representation, RECOVERY RESORTS provided care and treatment to F.P. with the express understanding that it would be paid out-of-network benefits by CONNECTICARE operating through either OPTUM, UNITED HEALTHCARE or both.

141.    RECOVERY RESORTS timely submitted a claim to CONNECTICARE or its designees for payment of the services provided to F.P. pursuant to his health insurance policy.

142.    These claims were denied.

143.    The basis for the denials was alternatively: (a) the fact that the treatment had not been pre-approved; and, (b) alleged issues with quality of care giving rise to a purported exclusion under the policy.

144.    The denial of these claims constitutes a breach of contract between CONNECTICARE and F.P.

145.    As the Assignee of these benefits, the Plaintiffs, DEBRA MOSER and KONSTANDINOS PATZANAKIDIS, are entitled to enforce the terms of this health insurance contract between F.P. and CONNECTICARE. The Plaintiffs have exhausted their administrative remedies under the Plan.

146.    Therefore, the Plaintiffs are entitled to an award of damages, including compensatory, actual and consequential damages, against the Defendant for breach of the health insurance contract between F.P. and CONNECITCARE in an amount to be determined by the trier-of-fact.

WHEREFORE, the Plaintiffs, DEBRA MOSER and KONSTANDINOS PATZANAKIDS demand judgement against the Defendant, CONNECITCARE, INC., in an amount determined by the trier-of-fact along with an award of prejudgment interest and costs.

## COUNT X- BREACH OF CONTRACT (N.Lu.)

The Plaintiffs hereby re-allege and incorporate paragraphs 1-20 above as though they were fully set forth herein, and further state as follows:

147.    In 2020, N.Lu. was a Participant in a health insurance policy through CONNECTICARE. This policy was identified by ConnectiCare policy number 97063361401.

148.    This health insurance policy entitled N.Lu. to obtain mental health and substance abuse treatments which would be paid for by CONNECTICARE. The amount of

the payment would depend upon: (a) the reasonable charges assessed by the facility; and (b) whether the provider was in-network or out-of-network with CONNECTICARE.

149. In consideration of this health insurance policy generally, and these mental health and substance abuse benefits specifically, N.Lu. paid CONNECTICARE premiums giving rise to a valid and enforceable contract.

150. CONNECTICARE outsources the administration, management and payment of mental health and substance abuse treatments to third-party entities, including OPTUM INC., and UNITED HEALTHCARE SERVICES, INC.

151. Therefore, mental health and substance abuse treatment providers acting under an Assignment of Benefits from N.Lu. were directed to coordinate their care and treatment through OPTUM and UNITED HEALTHCARE with the expectation that payments would flow through them from the underlying CONNECTICARE policy.

152. N.Lu. contacted RECOVERY RESORTS and sought treatment from its facility in Plam Beach, Florida. In order to procure this treatment, N.Lu. executed an Assignment of Benefits in favor of RECOVERY RESORTS with the expectation that it would see payment from CONNECTICARE either directly or through its designees OPTUM and/or UNITED HEALTHCARE.

153.    Prior to admitting N.Lu. or providing any treatment, DEBRA MOSER contacted UNITED HEALTHCARE on his behalf to secure pre-authorization from the health insurance company. When she did so, she was informed that UNITED HEALTHCARE was not presently requiring pre-authorizations because of the emerging pandemic. Ms. Moser was informed that the pre-authorization requirement in N.Lu.'s policy was suspended indefinitely and that RECOVERY RESORTS should proceed as if it had been granted. Ms. Moser confirmed this representation with a similar statement that was posted on the UNITED HEALTHCARE website.

154.    Based upon this representation, RECOVERY RESORTS provided care and treatment to N.Lu. with the express understanding that it would be paid out-of-network benefits by CONNECTICARE operating through either OPTUM, UNITED HEALTHCARE or both.

155.    RECOVERY RESORTS timely submitted a claim to CONNECTICARE or its designees for payment of the services provided to N.Lu. pursuant to his health insurance policy.

156.    These claims were denied.

157.    The basis for the denials was alternatively: (a) the fact that the treatment had not been pre-approved; and, (b) alleged issues with quality of care giving rise to a purported exclusion under the policy.

158.    The denial of these claims constitutes a breach of contract between CONNECTICARE and N.Lu.

159.    As the Assignee of these benefits, the Plaintiffs, DEBRA MOSER and KONSTANDINOS PATZANAKIDIS, are entitled to enforce the terms of this health insurance contract between N.Lu. and CONNECTICARE. The Plaintiffs have exhausted their administrative remedies under the Plan.

160.    Therefore, the Plaintiffs are entitled to an award of damages, including compensatory, actual and consequential damages, against the Defendant for breach of the health insurance contract between N.Lu. and CONNECITCARE in an amount to be determined by the trier-of-fact.

WHEREFORE, the Plaintiffs, DEBRA MOSER and KONSTANDINOS PATZANAKIDS demand judgement against the Defendant, CONNECITCARE, INC., in an amount determined by the trier-of-fact along with an award of prejudgment interest and costs.

### COUNT XI- CUTPA

The Plaintiffs hereby re-allege and incorporate paragraphs 1-20 above as though they were fully set forth herein, and further states as follows:

161.    The Defendant, CONNECTICARE, is a health insurer that is authorized to do business within the State of Connecticut and it regularly exercises this authority by providing health plans and insurance to cover the state's resident's for medical care received both inside and outside of Connecticut.

162.    Under the terms of the health insurance policies that it offers, CONNECTICARE pays different percentage of a patient's total medical costs depending on whether the provider is in-network or out-of-network.  In either case though, CONNECTICARE is obligated to pay providers for services rendered in accordance with the terms of the policy.

163.    Over the course of approximately six (6) months, the Defendant engaged in a pattern and practice to systematically deny claims submitted on behalf of the patients of RECOVERY RESORTS OF THE PALM BEACHES for services related to drug and alcohol rehabilitation.

164.    In order to perpetrate the scheme, the Defendant initially failed to pay claims submitted by RECOVERY RESORT OF THE PALM BEACHES without informing the facility of the reason behind its non-payment.  When asked, the Defendant informed the billing representative for RECOVERY RESORT that due to workload and labor limitations imposed by the Coronavirus pandemic, the Defendant's accounts payable division was simply running behind.

165.    When a representative from RECOVERY RESORT continued calling the Defendant about the payments that were due, she was eventually told that these expenses would not be paid because the treatment was pre-approved.  This verbal denial was not expressed in writing or provided to RECOVERY RESORTS in any formal manner, but rather was relayed over the telephone with instructions that they should re-submit each claim in the form of an appeal.

166.    The denial of these claims on the grounds that the treatment was not pre-approved ignored the fact that CONNECTICARE and/or its administrators OPTUM and UNITED HEALTHCARE both expressly waived the pre-authorization requirements for this time period due to the burden of the Coronavirus pandemic.  In fact, RECOVERY RESORT attempted to get pre-approval for each of the affected patients, in advance, but was repeatedly told that this requirement was waived and not available to patients or providers at this time.

167.    In other words, CONNECTICARE or its agents waived the pre-authorization requirement and eliminated the pre-authorization process but the subsequently denied RECOVERY RESORTS claims across the board on the bases that the services were not pre-authorized.

168.    Upon learning that its claims were denied, RECOVERY  RESORTS  appealed the decision on behalf of each of its affected patients.  These appeals were repeatedly denied

both based upon the absence of pre-authorization and later based upon contrived reasons including a claim that documents did not support the level of care provided and that there were concerns about Quality of Care/Member Safety.

169.    Each of these reasons for denying payment were (and are) demonstrably false and were provided solely as a pretext payment for otherwise compensable services.

170.    By engaging in a scheme to summarily deny each of the claims for this particular group of affected patients submitted by this particular practice, based upon care provided within the same time frame, CONNECTICARE engaged in a scheme to engage in unfair and deceptive trade practices barred by state law under the Connecticut Unfair Insurance Practices Act, Conn. Gen. Stat. § 38a-816.

171.    CONNECTICARE'S denial of these claims for payment violated § 38a-816(A) by misrepresenting facts or insurance policy provisions relating to coverage including denials based upon an assertion that pre-authorization was required, despite the fact that it was expressly waived by the company during this time period.

172.    CONNECTICARE'S denial of these claims for payment violated § 38a-816(D) by failing to pay claims without conducting a reasonable investigation based upon all available information.

173.    CONNECTICARE'S denial of these claims for payment violated § 38a-816(E) by failing to affirm or deny coverage within a reasonable time after proof of loss statements were provided.

174.    CONNECTICARE'S denial of these claims for payment violated § 38a-816(N) by failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for the denial of the claim.

175.    The Defendant's violations of § 38a-816(A) of the CUTPA (Connecticut Unfair Insurance Practices Act) constitute unfair and/or deceptive acts and practices in the conduct of trade or commerce.

176.    The Plaintiff has suffered an ascertainable loss of money as a result of the Defendant's violation of the CUTPA laws.

177.    The Defendant's systematic denial of the claims submitted by a healthcare provider offends public policy by putting their profits ahead of the wellbeing of their insured's and the providers who serve them despite the fact that they readily accepted premium payments to cover these exact type of expenses.  Further, the Defendant's denial of payment based upon a requirement that is expressly waived, and then its pretextual justifications of those denials on other, unsubstantiated grounds, violates the implied covenant of good faith and fair dealing which implicates public policy as well.

178.    The defendant's refusal to pay the charges incurred by their insured's and its use of shifting, but unsupported, reasons for its denial was immoral, unethical, and unscrupulous. It's doing so on a systematic basis to deprive this small business of substantial revenue was oppressive in nature.

179.    The Defendant's action caused substantial injury to consumers and other businesspersons, namely their insured's and their healthcare provider, RECOVERY RESORTS.

WHEREFORE, the Plaintiff demands judgment against the Defendant in an amount determined by the trier-of-fact for compensatory damages, interest, punitive damages, attorney's fees and costs as well as all other categories of damages permitted under the Connecticut Unfair Trade Practices Act.

## **DEMAND FOR JURY TRIAL**

The Plaintiffs hereby demand a trial by jury for all matters so triable as a matter of right.

Respectfully submitted,
Plaintiffs


By: /s/    (ct12299)_____
Jeffrey L. Ment
The Ment Law Group, PC
225 Asylum Street, 15th Floor
Hartford, CT 06103
Tel. (860) 969-3200
Fax. (860) 969-3210
E-mail: jment@mentlaw.com